# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

# CENTRAL DIVISION

| | |
|---|---|
| MICHAEL BARRETT,<br><br>        Plaintiff,<br><br>v.<br><br>SALT LAKE COUNTY and LINDA HAMILTON,<br><br>        Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:10CV792 DAK |

This matter is before the court on Defendants' Motion to Dismiss. A hearing on the motion was held on December 22, 2010. At the hearing, Plaintiff Michael Barrett was represented by Russell T. Monahan. Defendants Salt Lake County and Linda Hamilton were represented by Valerie M. Wilde. Before the hearing, the court carefully considered the memoranda and other materials submitted by the parties. Since taking the motion under advisement, the court has further considered the law and facts relating to the motion. Now being fully advised, the court renders the following Memorandum Decision and Order.

## BACKGROUND

The following allegations are assumed to be true for purposes of the instant motion to dismiss. Plaintiff first became employed by Salt Lake County in 1994 as a Building Inspector and worked his way to the managerial position of Deputy Chief Building Inspector in the Public Works Division. According to Plaintiff, in the fall of 2008, a co-worker, Laurie Nish confided in him regarding sexually harassing behavior that she was experiencing from her supervisor, Simon Ginn. Plaintiff claims he had witnessed some of the incidents, and he advised Ms. Nish to notify the appropriate persons of Mr. Ginn's behavior. Plaintiff claims that he and Ms. Nish were concerned about retribution from her harassment complaints, based on Mr. Ginn's business relationships with Defendant Linda Hamilton, Director of the Public Works Department and Defendant Doug Wilmore Chief Administrative Officer for Salt Lake County.

Because of the concern about retribution, Plaintiff arranged for a lunch meeting with County Councilman Michael Jensen on or about October 17, 2008. Councilman Jensen informed Ms. Nish that he felt obligated to inform the Salt Lake County Human Resources Department about the allegations due to their serious nature. On October 17, 2008, both Ms. Nish and Councilman Jensen informed Debra Smith of the County's Human Resources about Mr. Ginn's harassment. Council Jensen also informed Ms. Smith that Plaintiff and Mr. Swenson had relevant information to corroborate Ms. Nish's

allegations.

Ms. Smith then contacted Defendant Hamilton and informed Defendant Hamilton that Ms. Nish had registered a harassment complaint against Mr. Ginn. Ms. Smith also informed Defendant Hamilton that Plaintiff and Mr. Swenson were involved with Ms. Nish's filing of the complaint. Defendant Hamilton then informed Mr. Ginn of the complaint. After Mr. Ginn was informed of the complaint, according to Plaintiff, Mr. Ginn verbally accosted Ms. Nish in the workplace.

After Mr. Ginn's behavior was reported to Human Resources he was placed on administrative leave by Salt Lake County. Plaintiff alleges that after Mr. Ginn was placed on administrative leave, Plaintiff learned that Defendant Hamilton was blaming Plaintiff in part for Mr. Ginn's problems. According to Plaintiff, Defendant Hamilton claimed that Plaintiff, in conjunction with Ms. Nish and other employees, conspired to have Mr. Ginn terminated. Prior to the completion of the harassment investigation, Mr. Ginn resigned.

Plaintiff also alleges that, although the County had an established policy against gossiping in the workplace, Defendant Hamilton permitted co-workers to engage in gossiping without disciplining them. Instead of disciplining employees for gossiping, Defendant Hamilton chastised the subjects of the gossip and rumors. Plaintiff claims that both Defendant Hamilton and Ms. Smith were aware of rumors and gossip being spread by the co-workers of Plaintiff and Ms. Nish and that both Defendant Hamilton and Ms.

Smith were aware of jokes targeting Plaintiff and Ms. Nish, which contained sexual innuendo.

On January 9, 2009, the day after Mr. Ginn's resignation became public, Plaintiff and Mr. Swenson were placed on administrative leave by Defendant Hamilton. When Defendant Hamilton placed the Plaintiff on administrative leave, Defendant Hamilton provided no explanation for her actions. On the same day, Ms. Nish was called into a meeting with Phil Bernal, Associate Director for Public Works. At that meeting, Ms. Nish was informed that she was to cease communicating with Mr. Swenson and Plaintiff about any workplace issues that she may be experiencing.

According to Plaintiff, Defendant Hamilton told some employees that Mr. Swenson and Plaintiff were placed on administrative leave for a cooling down period, but she told other employees that Mr. Swenson and Plaintiff were placed on administrative leave for disciplinary reasons. After the Plaintiff was placed on administrative leave, Defendant Hamilton completed an employee evaluation of the Plaintiff. The employee evaluation was significantly lower than any of the Plaintiff's previous evaluations throughout his work with the County. In addition, the evaluation was conducted by Defendant Hamilton, although Defendant Hamilton was not the Plaintiff's direct supervisor at any time during the evaluation period.

On February 26, 2009, Plaintiff received a letter from Defendant Hamilton indicating the County's intent to terminate Plaintiff effective March 16, 2009. The letter

from Defendant Hamilton outlined the following justifications for the Plaintiff's termination:

    I.     Insubordination for Defendant's failure to follow the orders of Simon Ginn to stay away from Ms. Nish.

    ii.    Misuse of County Equipment in the Plaintiff's calls to Ms. Nish, which was also insubordination.

    iii.   The possibility that someone could make a sexual harassment complaint.

    iv.   Failure to manage subordinates, including failure to properly managed cells phone use.

    v.    Failure to manage, because no one wanted to work under the Plaintiff.

The Plaintiff's termination letter set a pre-termination hearing for March 11, 2009. Due to a medical procedure that the Plaintiff had to undergo, Jan Johnson, Defendant's representative from the Utah Alliance of Government Employees ("UAGE") requested that the pre-termination hearing be reset. According to Plaintiff, on March 16, 2009, Defendant Hamilton purportedly created a letter, dated that same day, which set the pre-termination hearing for 1:00 p.m. Friday, March 20, 2009. Plaintiff claims that Jan Johnson received the March 16th letter on March 20, 2010 at approximately 3:00 p.m., which is after the time of the hearing. Plaintiff asserts that he never received the letter.

On March 24, 2009, Plaintiff sent a letter to Defendant Hamilton specifically requesting a pre-termination hearing. Plaintiff, however, was terminated on March 26, 2009, without a pretermination hearing. Plaintiff filed a grievance challenging his

termination. On August 13, 2009, a hearing was held before the Salt Lake County Career Council (the "Career Council"), which is an agency of the County.

Upon learning that Defendant Hamilton failed to provide the Plaintiff with a pre-termination hearing in conformity with federal due process and County policy, the Career Council stayed the proceedings on the Plaintiff's grievance until Defendant Hamilton conducted a pre-termination hearing. The Career Council, however, did not order the Plaintiff reinstatement for this due process violation.

On August 17, 2009, Defendant Hamilton conducted what Plaintiff characterizes as a "sham" pretermination hearing. On August 24, 2009, Defendant Hamilton issued a second termination letter. According to Plaintiff, Defendant Hamilton's second termination letter contains allegations that Defendant Hamilton knew were unsupported and untruthful. Plaintiff also claims that Defendant Hamilton also contacted the Plaintiff's wife, whom the Plaintiff was in the processes of divorcing, in an attempt to dig up dirt on the Plaintiff. Plaintiff's ex-wife was not an employee of the county at the time of the Plaintiff's alleged policy violations.

On November 19th and 20th and on December 1st, 3rd, and 18th, the Career Council held additional hearing on the Plaintiff's Grievance. On or about January 14, 2010, the Council issued a sixteen-page decision, stating, among other things, that
> [T]he Council unanimously concludes that the charges of unprofessional conduct and neglect of duty are supported by substantial evidence. The Council, however, does not find that the misconduct warrants termination. . . . [T]he Council orders the modification of the Department's order by demoting Mr. Barrett from the position of Section Manager of the building

> Safety and Code Enforcement Section and Deputy Chief Building Official
> to a position and grade level that is consistent with his education, training
> and experience, such as a building inspector, a member of special projects
> similar to those he was participating in prior to his termination, or similar
> level.[1]

Plaintiff was reinstated with back pay at the reduced rate of pay. Plaintiff claims that, given his experience and skill, he should have been a Grade 27 with an hourly wage of $33.06, but he was put in a position as a Grade 23 with an hourly wage of $22.03. Neither party appealed the Council's decision and order.

On July 6, 2009, Plaintiff filed a retaliation charge with the EEOC and Utah Labor Commission stating "I believe the reasons given for my termination to be pretextual in nature with the real reason for my termination being retaliation for advising a co-worker in filing a sexual harassment complaint."

Plaintiff has now filed the instant lawsuit, alleging six Causes of Action: (1) Procedural Due Process; (2) Substantive Due Process; (3) Violation of Plaintiff's Right of Petition; (4) Hostile Work Environment; (5) Sexual Discrimination; and (6) Retaliation. Defendants have moved to dismiss all six causes of action.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) requires the court to decide whether the factual allegations made in the complaint, if true, would entitle the plaintiff to some sort

---

[1] Decision of Career Council, attached as Ex. 1. to Defendants' Memorandum in Support of the Motion to Dismiss ("Mem. in Supp."), found at Docket No. 7.

of legal remedy. To state a viable claim "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007)). "Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007). Or, in other words, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Id*. Additionally, "the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for [his] claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). The "requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008).

When deciding a motion to dismiss the court must accept all well-plead facts as true and draw reasonable inferences from those facts in favor of the non-moving party. *Ridge at Red Hawk, L.L.C.*, 493 F.3d at 1177. However, legal conclusions, deductions, and opinions couched as facts are not presumed to be true, and the court must disregard conclusory allegations without supporting factual averments. *See, e.g., Erikson v. Pawnee County Bd. of County Comm.*, 263 F.3d 1151, 1154-55 (10th Cir. 2001).

In addition, the sufficiency of a complaint generally must rest on its contents alone. *See*, *e.g.*, *Casanova v. Ulibarri*, 595 F.3d 1120, 1125 (10th Cir.2010). There are, however, exceptions to this restriction on what the court can consider. The court may consider documents referred to in the complaint "if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity," *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir.2002). Specifically, in this action, the court may refer to the County Council's January 14, 2010 decision, rendered after hearing Plaintiff's grievance, and to his EEOC Charge.[2]

## DISCUSSION

1. **PROCEDURAL DUE PROCESS CLAIM**

The first cause of action alleges that Plaintiff was denied his procedural due process rights when Defendant Hamilton failed to provide Plaintiff with a pre-termination hearing, later conducted a "sham" pre-termination hearing, and then relied upon "false and inaccurate" information to terminate him. To assess whether an individual was denied procedural due process, district courts must engage in a two-step inquiry: (1) Did the individual possess a protected interest such that the due process protections were applicable?; and, if so, then (2) Was the individual afforded an appropriate level of process? *Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 577 (10th Cir. 1996). The

---

[2] *See* Docket No. 7, Ex. 1 & 2. Although these two documents were not attached to the Complaint, Plaintiff referred to the Career Council Decision and his EEOC Charge in his Complaint, and he did not dispute the authenticity of these documents when Defendants attached and referred to them in their Memorandum in Support.

Defendants do not contest, for purposes of this motion, that Plaintiff possessed a protected interest in his employment. The question, then, is whether Mr. Barrett was afforded an appropriate level of process.

There is no dispute that a pre-termination hearing was originally scheduled. Plaintiff, however, claims that his UAGE representative requested that the hearing be rescheduled due to a medical procedure that Plaintiff had undergone. On March 16, 2009, Defendant Hamilton purportedly created a letter, setting the pre-termination hearing for 1:00 p.m. on Friday, March 20, 2009. According to Plaintiff, he never received the letter, and his representative did not receive the letter until Friday, March 20, 2009 at 3:00 p.m.[3]

On March 24, 2009, Plaintiff sent a letter to Defendant Hamilton specifically

---

[3] Defendant set forth in their statement of facts that the UAGE representative received notice of the rescheduling. *See* Defs' Mem. in Supp. at 2-3. Plaintiff, however, alleges that his representative received notice of the rescheduling *after* the rescheduled hearing time. As Defendants are aware, the court must accept Plaintiff's allegations as true at this stage of the litigation. If Defendants have evidence that the representative actually did get notice of the hearing time, they may present that evidence in a motion for summary judgment.

Defendants also assert that "Plaintiff admits to receiving . . . an opportunity to present his side of the story," *id*. at 7-8, but Defendants ignore Plaintiff's allegation that he requested that the hearing be rescheduled. Moreover, Defendants have not cited any authority for the proposition that simply providing an opportunity to respond – even if that opportunity is not workable for Plaintiff–satisfies due process requirements. Defendants also argue, but do not cite any authority for the proposition, that giving a Plaintiff a pre-termination hearing (after having already terminated Plaintiff) satisfies due process requirements.

Finally, Defendants contend that compensating Plaintiff from the date of termination until his reinstatement (at his demoted pay rate) satisfies due process. *See* Reply Mem. at 3. But again, Defendants cite no authority for such a proposition. While there is Tenth Circuit authority for the proposition that a due process claim might be rendered moot when all property rights are later restored, Plaintiff has not alleged that such was the case here.

10

requesting a pre-termination hearing. Plaintiff, however, was terminated on March 26, 2009 without a pre-termination hearing. When Plaintiff appealed this decision, the Career Council stayed the proceedings on the Plaintiff's grievance until Defendant Hamilton conducted a pre-termination hearing. According to Plaintiff, the Career Council did not order the Plaintiff reinstatement for this due process violation. On August 17, 2009, Defendant Hamilton conducted a "sham" pretermination hearing. On August 24, 2009, Defendant Hamilton issued a second termination letter.

On five days interspersed though November and December 2009, the Career Council held additional hearings on Plaintiff's grievance. Ultimately, on or about January 14, 2010, the Career Council issued a ruling ordering Plaintiff's reinstatement, but indicating that the Department could demote him to a non-managerial position.

The Supreme Court has held that the Due Process Clause requires " 'some kind of a hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 569-70 (1972)). "The pretermination 'hearing,' though necessary, need not be elaborate." *Loudermill*, 470 U.S. at 545. At a minimum, it must provide the employee notice and an opportunity to respond. *See id*. at 546. Nothing requires municipal employer to hold hearing prior to initial decision to terminate position; rather, a hearing is required before employees are actually deprived of their jobs, *i.e.*, before employee is deprived of any significant property interest. *Riggins v. Goodman*, 572 F.3d 1101 (10th Cir. 2009).

11

Here, although the Career Council ordered an "after the fact" pretermination hearing, Plaintiff has alleged that he had already been deprived of a property interest – his job. And even though the Career Council determined that Plaintiff should be compensated for the period between the termination and post-termination hearing, he apparently was not compensated at his pre-termination rate of pay and he was not reinstated to his previous position. The Tenth Circuit has found that a due process claim was not moot when a plaintiff received compensation for the period between the termination and the post-termination hearing, but he was not reinstated. *See Lovingier v. City of Black Hawk*, 198 F.3d 258 (Table), 1999 WL 1029125 (10th Cir. Nov. 12, 1999). Here, although Plaintiff ultimately was reinstated to a job with the County, the reinstatement was at a lower pay grade, and his retroactive pay appears to have been at this reduced rate of pay. At this point, the court cannot say that Plaintiff's property right was entirely restored such that, as a matter of law, he suffered no deprivation of a property interest.

In addition, to the extent Defendants argue that the post-termination hearing cured any due process deficiencies, that contention is incorrect. *Loudermill* holds that a post-termination hearing alone is ordinarily insufficient to satisfy the requirements of due process. *Loudermill* 470 U.S. at 544-45. The United States Supreme Court has held that due process does not require pre-deprivation hearings only where there is a need for quick action or where the deprivation is the result of a random and unauthorized act. *See Parratt*, 451 U.S. 527 (1981) *overruled on other grounds by Daniels v. Williams*, 474

U.S. 327 (1986); *Hudson v. Palmer*, 468 U.S. 517 (1984). These exceptions do not apply to the instant case.

Because the court must accept Plaintiff's allegations as true at this stage, the court declines to dismiss Plaintiff's First Cause of Action.

**2**. **SUBSTANTIVE DUE PROCESS CLAIM**

Plaintiff's second cause of action alleges that he was denied substantive due process by the following actions of Defendant Hamilton: (1) a Notice of Termination was issued containing allegations that Defendant knew or should have known had no evidentiary support; (2) conducting a sham investigation: (3) making false statements to the Career Service Council; and (4) contacting Plaintiff's wife in an attempt to dig up unrelated dirt on the Plaintiff.

A substantive-due-process claim, if viable, requires assessing whether a governmental action is arbitrary, irrational, or shocking to the contemporary conscience. *Darr v. Town of Telluride, Colo.,* 495 F.3d 1243, 1258 (10th Cir. 2007); *Butler v. Rio Rancho Pub. Schs. Bd. of Educ.*, 341 F.3d 1197, 1200-01 (10th Cir.2003); *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 528 (10th Cir.1998). At this point in the litigation, the court must accept Plaintiff's allegations as true, and thus, the court finds that Plaintiff has stated a claim for violation of substantive due process, and Defendant's motion to dismiss this Second Cause of Action is denied.

3.  **DEFENDANT'S ASSERTION OF RES JUDICATA**[4]

Defendants argue that Plaintiff has failed to exhaust his right to appeal the final decision of the County Career Service Council, and therefore, he cannot collaterally attack the Council's findings.[5] Defendants also contend that Plaintiff cannot raise any issues that were not previously raised.[6] The court recognizes that federal courts, in some situations, must give an agency's fact finding the same preclusive effect to which such findings would be entitled in state court. *University of Tennessee v. Elliott*, 478 U.S. 788, 799 (1986). However, *Elliott* sets forth various standards that must be satisfied, and Defendants have not endeavored to analyze whether, in this situation, *Elliott* applies. They have also not evaluated what preclusive effect such findings would have in Utah state courts.

It is not clear to the court that the issues or claims presented in the instant lawsuit were identical to the issues presented to the Career Council, and it is also not apparent to this court that Plaintiff could have asserted all his claims. Defendants have not demonstrated that the Council had the authority to adjudicate Title VII claims, even if Plaintiff had asserted them. Thus, Defendants have failed to persuade the court at this

---

[4] Defendants assert that the doctrine of "res judicata" or "claim preclusion," bar Plaintiff's claims, but the court assumes that Defendants intended to argue that "collateral estoppel" or "issue preclusion" bar the claims because it does not appear that Defendant Hamilton was a named party in the grievance proceedings or that identical claims were brought previously.

[5] *See* Mem in Supp. at 9.

[6] *Id*.

14

point that Plaintiff is collaterally estopped from attacking the reasons for his discipline (and therefore from bringing his claims). If Defendants have support for such an argument and can demonstrate to the court that the elements of issue preclusion and/or claim preclusion have been satisfied, they may, on summary judgment, renew their argument that Plaintiff is estopped from asserting some or all of his remaining claims.

**4.    FIRST AMENDMENT CLAIM**

Plaintiff's Third Cause of Action alleges Defendant Hamilton violated Plaintiff's First Amendment Right to petition his government for redress. To establish such a claim, Plaintiff must show: "(i) that [he] engaged in constitutionally protected activity; (ii) that the Defendant took an action against [him] that would chill a person of ordinary firmness from continuing to engage in that activity; and (iii) that the adverse action was substantially motivated as a response to the constitutionally protected activity." *McBeth v. Hines*, 598 F.3d 708, 717 (10th Cir. 2010); *Deutsch v. Jordan*, 618 F.3d 1093, 1097-98 (10th Cir.2010).

There is a five-step inquiry, referred to as the "*Garcetti/Pickering*" analysis, that courts now use to analyze freedom of speech retaliation claims. *See Brammer-Hoelter v. Twin Peaks Charter Academy*, 492 F.3d 1192 (10th Cir. 2007) (*referring to Garcetti v. Ceballos*, 547 U.S.410 (2006) and *Pickering v. Board of Educ.*, 391 U.S. 563 (1968)). First, the court must determine whether the employee speaks "pursuant to [his] official duties." *Garcetti*, 126 S. Ct. at 1960; *see also Mills v. City of Evansville*, 452 F.3d 646, 647 (7th Cir. 2006) (" Garcetti ... holds that before asking whether the subject-matter of

15

particular speech is a topic of public concern, the court must decide whether the plaintiff was speaking 'as a citizen'...."). If the employee speaks pursuant to his official duties, then there is no constitutional protection because the restriction on speech "simply reflects the exercise of employer control over what the employer itself has commissioned or created." *Garcetti*, 126 S.Ct. at 1960; *Deutsch*, 618 F.3d at 1097; *Lauck v. Campbell County*, 627 F.3d 805 (10th Cir. 2010).

While *Garcetti* did not set forth a formula for determining when a government employee speaks pursuant to his official duties, cases interpreting *Garcetti* have made clear that speech relating to tasks within an employee's uncontested employment responsibilities is not protected from regulation. *Brammer-Hoelter,* 492 F.3d at 1203 (citing cases). This may be true even though the speech concerns an unusual aspect of an employee's job that is not part of his everyday functions. Indeed, we have stated that speech is made pursuant to official duties if it is generally consistent with "the type of activities [the employee] was paid to do." *Id.* (quoting *Green v. Bd. of County Commr's*, 472 F.3d 794, 801 (10th Cir. 2007).

"An employee's official job description is not dispositive, however, because speech may be made pursuant to an employee's official duties even if it deals with activities that the employee is not expressly required to perform." *Brammer-Hoelter,* 492 F.3d at 1203. The ultimate question is whether the employee speaks as a citizen or instead as a government employee-an individual acting "in his or her professional capacity." *Id.* (citing *Garcetti*, 126 S.Ct. at 1960).

In this case, Plaintiff admits that he held the position of Deputy Chief Building Inspector in the Public Work's Division. He admits that Ms. Nish was a coworker who complained of sexual harassment. He admits to witnessing the harassment. Plaintiff admits that his report to Councilman Jensen was for the purpose of reporting sexual harassment in the workplace. Plaintiff admits that even Councilman Jensen was **obligated** to report the harassment. *(Emphasis added )*. Plaintiff's communications with Councilman Jensen were made in the course of his responsibilities as an employee. The court finds that, as a manager, and pursuant to County policy and procedure, Plaintiff was required to report any sexual harassment of which he was aware. Consequently, he was speaking as a public employee and not as a citizen when he reported the alleged sexual harassment, and his speech was therefore not protected. *See e.g.*, *Harrison v. Oakland County*, 612 F. Supp. 2d 848, 867 (E.D. Mich.2009) (employee was not speaking "as a citizen" when he complained to his superiors about co-worker's sexually inappropriate conduct); *Dane v. Board of Sup'rs of Louisiana State University*, 2010 WL 3717242 (M.D. La. 2010) (plaintiff's reports of sexual harassment were made in the course of performing his job and pursuant to his official duties); *Haynes v. City of Circleville, Ohio*, 474 F.3d 357, 364-65 (6th Cir.2007) (finding that a police officer's memorandum was not protected speech where it concerned his official duties and was addressed only to his supervisor); .

Because his speech was not constitutionally protected, it cannot form the basis of a First Amendment claim, and Plaintiff's Third Cause of Action is dismissed.

### 5. HOSTILE WORK ENVIRONMENT CLAIM

Claims under Title VII face strict jurisdictional limitations. A charge of discrimination or retaliation must be filed with the EEOC within 300 days of any alleged discriminatory act. *Tademy v. Union Pac. Corp.*, 520 F.3d 1149, 1167-68 (10th Cir. 2008). The requirement that Title VII charges be administratively exhausted via an EEOC charge is jurisdictional; a plaintiff may not bring suit in federal court on unexhausted claims. *Jones v. Runyon*, 91 F3d 1398, 1399 (10th Cir. 1996). Title VII requires each discrete act of discrimination to be described in the subject of a timely filed charge. *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1166 (10th Cir. 2007). Under the rule of exhaustion, this Court has jurisdiction to consider only those events described in Plaintiff's EEOC charge and occurring within the 300-day period.

Having considered Plaintiff's EEOC Charge, the court finds that Plaintiff's claim for Hostile Work Environment must be dismissed. Plaintiff did not assert a charge of hostile work environment in his EEOC charge, and it cannot reasonably be read to fall within his charge. Accordingly, the hostile work environment claim (Fourth Cause of Action) is dismissed.

### 6. SEXUAL DISCRIMINATION CLAIM

Plaintiff has conceded that this claim should be dismissed for failure to exhaust administrative remedies. Accordingly, the sexual discrimination claim (Fifth Cause of Action) is dismissed.

7. **RETALIATION CLAIM**

Defendants argue that Plaintiff is precluded from relitigating the cause of his termination. Consistent with the discussion above relating to issue and/or claim preclusion,[7] the court disagrees with Defendants position at this point. The court therefore declines to dismiss Plaintiff's retaliation claim, the Sixth Cause of Action.

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that Defendant's Motion to Dismiss [Docket No. 6] is GRANTED in part and DENIED in part. The following Causes of Action are DISMISSED for failure to state a claim:

Plaintiff's Third Cause of Action (Violation of Plaintiff's Right of Petition);

Plaintiff's Fourth Cause of Action (Hostile Work Environment); and

Plaintiff's Fifth Cause of Action (Sexual Discrimination).

The First, Second, and Sixth Causes of Action remain.

DATED this 29th day of March, 2011.

BY THE COURT:

*[signature: Dale A. Kimball]*

DALE A. KIMBALL
United States District Judge

---

[7] *See* pp. 12-13.