**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| **MICHAEL BARRETT,** | |
| **Plaintiff,** | **MEMORANDUM DECISION AND ORDER** |
| **v.** | |
| **SALT LAKE COUNTY and LINDA HAMILTON,** | **Case No.  2:10CV792 DAK** |
| **Defendants.** | |

This matter is before the court on Defendants Salt Lake County and Linda Hamilton's Motion for Summary Judgment.  A hearing on the motion was held on April 18, 2012.   At the hearing, Plaintiff Michael Barrett was represented by Russell T. Monahan.   Defendants Salt Lake County and Linda Hamilton were represented by Valerie M. Wilde.   Before the hearing, the court carefully considered the memoranda and other materials submitted by the parties.  Since taking the motion under advisement, the court has further considered the law and facts relating to the motion.  Now being fully advised, the court renders the following Memorandum Decision and Order.

**BACKGROUND**

The history of this dispute is set forth in the court's Memorandum Decision and Order

(the "Order") dated March 29, 2011.[1]  In that Order, the court dismissed Plaintiff's Third Cause

of Action (Violation of Plaintiff's Right of Petition), Fourth Cause of Action (Hostile Work

Environment), and Fifth Cause of Action (Sexual Discrimination).   The court let stand

Plaintiff's First Cause of Action (Violation of Procedural Due Process), Second Cause of Action

(Violation of Substantive Due Process), and Sixth Cause of Action (Retaliation Pursuant to Title

VII).   Defendants subsequently filed the instant Motion for Summary Judgment, seeking

dismissal of the remaining three causes of action.   For the reasons set forth below, the court

grants Defendants' motion as it pertains to the two due process claims, but denies the motion as

to the Title VII retaliation claim.

## DISCUSSION

**I.  Procedural Due Process:**

Plaintiff claims that Ms. Hamilton violated his procedural due process rights by

terminating his employment without a pre-termination hearing and subsequently conducting a

sham pre-termination hearing.[2]  Defendants, however, claim that Ms. Hamilton is entitled to

qualified immunity on this claim.

To "assess whether an individual was denied procedural due process, courts must engage

in a two-step inquiry: (1) did the individual possess a protected interest such that the due process

protections were applicable; and, if so, then (2) was the individual afforded an appropriate level

---

[1]  Docket No. 12.

[2]  *See* Pl.'s Mem. in Opp'n at 17.

2

of process." *Montgomery v. City of Ardmore*, 365 F.3d 926, 935 (10th Cir.2004) (internal quotation marks and citation omitted).   Defendants in this case do not contest that Plaintiff enjoyed a protected property interest in his employment.   Thus, the question is whether he was afforded an appropriate level of process. "An essential principle of due process is that a deprivation of life, liberty or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (internal quotation marks omitted).  Accordingly, an individual must be given an opportunity for a hearing before he is deprived of any significant property interest." *Id*. (internal quotation marks omitted).

Such a hearing requires: (1) oral or written notice to the employee of the charges against him; (2) an explanation of the employer's evidence; and (3) an opportunity for the employee to present his side of the story. *Merrifield v. Board of County Comm'rs for County of Santa Fe*, 654 F.3d 1073, 1076 (10th Cir. 2011) (quoting *Riggins v. Goodman*, 572 F.3d 1101, 1108 (10th Cir. 2009) (brackets and internal quotation marks omitted)).   There is no dispute that Plaintiff received notice of the charges against him and an explanation of the employer's evidence.  The relevant question in this case is whether Plaintiff was presented with a legally sufficient opportunity to present his side of the story before his employment was terminated.

In the instant motion, Defendants contend that Plaintiff cannot establish factually that he was denied the opportunity to present his side of the story prior to the termination of his employment.   "[A] full evidentiary hearing is not required prior to an adverse employment action"; it suffices that the employee is "given notice and an opportunity to respond." *Riggins*,

572 F.3d at 1108  (internal quotation marks omitted).

It is undisputed that Ms. Hamilton placed Plaintiff on paid administrative leave on January 9, 2009 because his "conduct may have violated County policy."[3]  On February 26, 2009, Ms. Hamilton sent to Plaintiff a Notice of Intent to Terminate his employment.  The Notice indicated that there would be a pre-termination hearing on March 11, 2009.   The Notice set forth the basis for his termination and also explained that he would remain on paid administrative leave until "after their discussion" and until she issued her final decision regarding his employment status.[4]

On March 3, 2009, Plaintiff told his representative from the Utah Alliance of Government Employees ("UAGE") that he was having surgery on March 4, 2009 and would still be recuperating on March 11, 2009.  Therefore, he would not be available for the March 11, 2009, pre-termination hearing.[5]   Upon being notified of the situation, Ms. Hamilton agreed to delay the hearing.  Although the facts are disputed as to who was supposed to contact whom to reschedule the hearing, it is undisputed that, when Ms. Hamilton did not hear from Plaintiff or his UAGE representative by March 16, 2009, she sent a letter via certified mail to Plaintiff (and also sent a copy to Plaintiff's UAGE representative), indicating that the hearing would be rescheduled for March 20, 2009, and that she would not offer any further extension.[6]  In the letter, Ms. Hamilton

---

[3]  Ex. 23, attached to Pl.'s Mem. in Opp'n.

[4]  Ex. 27, attached to Pl.'s Mem. in Opp'n.

[5]  Ex. 29, attached to Pl.'s Mem. in Opp'n.

[6]  Ex.10, attached to Defs.' Mem. in Supp.

also indicated that he could respond by written statement if he could not attend the March 20, 2009, pre-termination hearing.[7]   Plaintiff claims, however, that he never received the letter and that his representative received notice of the pre-termination hearing on March 20, 2009–approximately two hours after the time set for the hearing.[8]   Consequently, Plaintiff did not appear for his pretermination hearing.

There is no dispute, however, that the postal service attempted delivery of the certified letter on March 19, 2009, and that the letter was sent to the correct address.  There is also no dispute that Plaintiff's representative did not contact Ms. Hamilton on Friday, March 20, 2009, after he received the letter, or on Monday, March 23, 2009.  It is also clear that Mr. Barrett was not incapacitated during this time because he had drafted a grievance to the Career Service Council about his March 2009 Evaluation and "any pending matters including . . . . Complaints, Allegations, Leave, Letters of Termination, Termination, or any other derogatory or disciplinary proceedings . . . ." The two-page, single-spaced grievance was dated March 18, 2009.[9]

On Monday, March 23, 2009, after Plaintiff did not appear for the hearing, respond in writing, or otherwise contact Ms. Hamilton, she sent a letter notifying Plaintiff of her final decision to terminate his employment.[10]   There is no evidence that Ms. Hamilton was aware that Plaintiff had not received notice of the March 20th hearing.  On Tuesday, March 24, 2009,

---

[7]  *Id*.

[8]  Ex. 31, attached to Pl.'s Mem. in Opp'n.

[9]  Ex. 17, attached to Defs.' Mem in Supp.

[10]  Ex. 33, attached to Pl.'s Mem. in Opp'n.

Plaintiff asked his UAGE to hand-deliver a letter to Ms. Hamilton.  The letter from Plaintiff stated that he had not received the notice of the pre-termination hearing and that he would be available on March 26 or 27, 2009, for a pre-termination hearing.[11]   The letter was emailed to Ms. Hamilton at approximately 4:00 p.m. on Tuesday, March 24, 2009.

 Given the specific facts of this case, the court finds that Plaintiff's procedural due process claim fails because Ms. Hamilton is entitled to qualified immunity.  Under the qualified immunity doctrine, "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established [federal] statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff, who must clear two hurdles in order to defeat the defendant's motion.   A plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity.  *Pearson v. Callahan*, 555 U.S. 223 (2009).  The Supreme Court has held that qualified immunity is proper when the record plainly demonstrates no constitutional right has been violated, or that the allegations do not offend clearly established law.  *Scott v. Harris*, 550 U.S. 372 (2007).

 A right is clearly established when, at the time of the alleged violation, "the contours of the right [were] sufficiently clear that a reasonable official would understand that what he is

---

[11]  Ex. 33, attached to Pl.'s Mem. in Opp'n.

doing violates that right." *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008).  A plaintiff can demonstrate that a constitutional right is clearly established by references to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits.  *Id*.

In this case, even if the court found that Plaintiff's due process rights were violated on the basis of Ms. Hamilton's failure to provide him with an adequate opportunity to respond, Ms. Hamilton is entitled to qualified immunity because Plaintiff has not cited any clearly established law regarding the contours of the requirement of "providing an o*pportunity* to respond" and the extent to which the employer must accommodate an employee's schedule.

Here, Plaintiff was initially given almost two weeks notice regarding his pre-termination hearing.  It is not clear from the record why he did not notify Ms. Hamilton about his surgery well in advance or why he did not request to have the pretermination hearing rescheduled for a date prior to his surgery.  There is no evidence in the record about the nature of Plaintiff's surgery, whether Ms. Hamilton should have known Plaintiff was having surgery or that he would need a significant amount of time to recuperate.  Thus, there is no evidence whatsoever that Ms. Hamilton was purposely setting an unreasonable date for a pretermination hearing.

Ms. Hamilton readily agreed to reschedule the initial March 11, 2009 hearing, which was a full week after Plaintiff's March 4, 2009 surgery.  When she did not hear anything from Plaintiff or his UAGE representative for five days after the originally scheduled hearing, she set the hearing for March 20, 2009–a date that was sixteen days after his surgery.   There is no evidence that Ms. Hamilton knew or should have known that Plaintiff was allegedly still recuperating.  In addition, there is no evidence that Ms. Hamilton knew or should have known

7

that Plaintiff had not received the notice of the rescheduled hearing, particularly when it was sent

to the correct address (and to his UAGE representative).   There is no dispute that Ms. Hamilton

did not hear from Plaintiff or his representative after Plaintiff missed the March 20 hearing–even

though his representative received notice of the hearing on the afternoon of March 20.   And there

is no evidence that there were any urgent calls over the weekend or on the following Monday,

March 23.   In addition, there was no written response submitted by the time Ms. Hamilton

drafted the final termination letter.   Accordingly, it was reasonable for Ms. Hamilton to believe

that she had given Plaintiff an adequate opportunity to respond if he so desired.

By the time Ms. Hamilton heard from Plaintiff on Tuesday, March 24, 2009, she had

already sent her final termination letter.   Her belief that she could not "un-ring the bell" about

the termination letter at that point was reasonable.   Simply put, there is no clearly established

law that would guide Ms. Hamilton in these specific circumstances, and therefore, she is entitled

to qualified immunity.[12]

## II.  Substantive Due Process

Plaintiff's second cause of action alleges that Plaintiff was denied substantive due process

when: (1) Ms. Hamilton initiated a notice of termination that she knew or should have known

had no evidentiary support; (2) Ms. Hamilton conducted a sham investigation; (3) Ms. Hamilton

---

[12]  Because the court finds that Ms. Hamilton is entitled to qualified immunity on
Plaintiff's procedural due process claim, it is not necessary to address Plaintiff's additional
allegations pertaining to his procedural due process claim, including his allegation that Ms.
Hamilton later conducted a "sham" pretermination hearing and that she relied upon "false and
inaccurate statements" to terminate him.

made false statements to the Career Service Council about criminal allegations against Plaintiff; and (4) Ms. Hamilton contacted Plaintiff's wife in an attempt to "dig up unrelated dirt" on the Plaintiff.

The Fourteenth Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law."  U.S. Const., amend. 14, § 1.  As the Supreme Court has explained, the Due Process Clause "guarantees more than fair process." *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997).   The Clause "cover[s] a substantive sphere as well, barring certain government actions regardless of the fairness of the procedures used to implement them."  *County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998) (quotation omitted).[13]  In its substantive mode, the Fourteenth Amendment provides protection against arbitrary and oppressive government action, even when taken to further a legitimate governmental objective. *Id*. at 845-46.

 "A public employee with a property interest in continued employment has a substantive-due-process right not to be terminated for arbitrary or capricious reasons." *Darr v. Town of Telluride*, 495 F.3d 1243, 1250 (10th Cir. 2007).   A substantive-due-process claim, if viable, requires assessing whether a governmental action is arbitrary, irrational, or shocking to the contemporary conscience.  *Butler v. Rio Rancho Pub. Schs. Bd. of Educ.*, 341 F.3d 1197,

---

[13]   There are two strands of the substantive due process doctrine.  One strand protects an individual's fundamental liberty interests, while the other protects against the exercise of governmental power that shocks the conscience.  *Seegmiller v. LaVerkin City*, 528 F.3d 762, 767 (10th Cir. 2008) (citation omitted).  In this case, no liberty interest is alleged, and Plaintiff appropriately claims that Ms. Hamilton's exercise of governmental power shocks the conscience. Thus, the court need not address the liberty interest strand of this doctrine.

1200-01 (10th Cir. 2003);  *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 528 (10th Cir.1998). The "ultimate standard" for assessing an alleged violation of substantive due process is "whether the challenged government action shocks the conscience of federal judges."  *Ward v. Anderson*, 494 F.3d 929 (10th Cir. 2007); *Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th Cir.2006) (quotation omitted); *see also Seegmiller v. LaVerkin City*, 528 F.3d 762, 766-67 (10th Cir. 2008); *Camuglia*, 448 F.3d at 1222; *Clark v. City of Draper*, 168 F.3d 1185, 1190 (10th Cir.1999);  *Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir.1995).   This standard is not an easy one for a plaintiff to satisfy.

The fact that "reasonable minds could disagree on the propriety of [the plaintiff]'s termination" is insufficient to defeat a public official's qualified immunity against a substantive due process claim.  *Lewis v. University of Texas Medical Branch at Galveston*, 665 F.3d 625, 631 (5th Cir. 2011) (citation omitted).  Rather, the plaintiff must show that the decision was "made without a rational connection between the known facts and the decision or between the found facts and the evidence."  *Id.*  (citation omitted).   The plaintiff must "demonstrate that the abuse of power by the state official shocks the conscience."  *Id.*

The tortious conduct alleged "must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power . . . .  [It] must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking."  *Livsey v. Salt Lake County*, 275 F.3d 952, 957-58 (10th Cir.2001) (emphasis added) (quotation omitted).  "Not surprisingly, little governmental action is held unconstitutional under th[is] formulation[ ]."  *Id.*  (citing 1 Martin A. Schwartz,

Section 1983 Litigation § 3.05[D], at 3-116 (4th ed. 2006)).

Again, the court finds that Ms. Hamilton is entitled to qualified immunity because Plaintiff has not created a disputed fact as to whether a constitutional violation was committed. Plaintiff claims that Ms. Hamilton initiated a notice of termination that she knew or should have known had no evidentiary support.   The record simply does not support this contention.   An Organizational Review, conducted in the fall of 2008 by managerial employees outside of both the division and the department of public works conducted supported Ms. Hamilton's decision. Moreover, there is no dispute that the Career Services Council, after a multi-day evidentiary hearing concluded that the charges of insubordination, unprofessional conduct, misuse of county property, neglect of duty were supported by substantial evidence.[14]

Next, Plaintiff alleges that his substantive due process rights were violated because Ms. Hamilton conducted a sham investigation.   There is simply no evidence to support this allegation. Plaintiff has not disputed that the Organizational Review was conducted by three independent investigators.

Plaintiff also claims that Ms. Hamilton made false statements to the Career Service Council about criminal allegations against Plaintiff.   First, Plaintiff has not proffered any evidence that she made any statements to the Career Service Council about criminal allegations. Plaintiff cites only to Ms. Hamilton's deposition in which she testified that she had learned from one of the investigators conducting the Organizational Review that someone believed Plaintiff

---

[14]   Ex. 40, attached to Pl.'s Mem. in Opp'n.

was receiving kick-backs from Nextel.   There is no testimony that she so testified at the hearing in front of the Career Services Council, and such an allegation is never mentioned to support the decision of the Career Services Council.   Indeed, such an allegation is not even listed in Ms. Hamilton's Notice of Intent to Terminate.[15]

Finally, Plaintiff claims that Ms. Hamilton contacted Plaintiff's wife in an attempt to "dig up unrelated dirt" on the Plaintiff.   Plaintiff has not cited any support for such an allegation. Because there is no support for any of Plaintiff's allegations pertaining to an alleged violation of substantive due process, the court cannot find that Ms. Hamilton's actions "shock the judicial conscience."   Consequently, Ms. Hamilton is entitled to qualified immunity on this claim.

## III.  Retaliation Pursuant to Title VII

Plaintiff's third and final remaining claim alleges that Defendant County retaliated against him for his role in helping Ms. Nish report allegations of sexual harassment in the workplace.   To state a prima facie case of retaliation, Plaintiff must show that: (1) he engaged in protected activity; (2) defendant took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action.  *Metzler v. Federal Home Loan Bank of Topeka*, 464 F. 3d 1164, 1171 (10th Cir. 2006) (citing *McDonald Douglas Corp v. Green*, 411 U.S. 792, 802-04 (1973)).

Here, there is no question that Plaintiff engaged in protected activity or that he suffered a materially adverse action.   And Plaintiff has created a disputed issue as to whether there is a

---

[15]  Ex. 6, attached to Defs.' Mem. in Supp.

causal connection between the protected activity and the adverse action, i.e., whether Ms. Hamilton knew of Plaintiff's involvement in helping Ms. Nish report the alleged sexual harassment.  Viewing the evidence in a light most favorable to Plaintiff, the court finds that, for purposes of this motion, Plaintiff has established a prima facie case.

Accordingly, the burden of production shifts to Defendant to state a legitimate, nondiscriminatory reason for the adverse action.   If evidence of a legitimate reason is produced, the burden then shifts back to Plaintiff to demonstrate that the asserted reason was pretext for discrimination.  *See McDonald-Cuba v. Santa Fe Protective Services*, 664 F.3d 1096, 1102 (10th Cir.2011).  The overall burden of persuasion remains on Plaintiff.  *See Sauers v. Salt Lake County*, 1 F.3d 1122, 1128 (10th Cir. 1993).  "The relevant inquiry is not whether [the employer's] proffered reasons were wise, fair, or correct, but whether [it] honestly believed those reasons and acted in good faith upon those beliefs."  *Rivera v. City & Cnty. of Denver*, 365 F.3d 912, 924–25 (10th Cir.2004) (alterations in original) (internal quotation marks omitted).   "In determining whether the proffered reason for a decision was pretextual, 'we examine the facts as they appear to the person making the decision.'"  *Watts v. City of Norman*, 270 F.3d 1288, 1295 (10th Cir. 2001) (quoting *Selenke v. Med. Imaging of Colorado*, 248 F.3d 1249, 1261 (10th Cir. 2001)).

Here, the County argues that it has articulated a legitimate, non-discriminatory reason for terminating Plaintiff's employment and that Plaintiff cannot demonstrate pretext for discrimination.  The court, however, finds that Plaintiff has created a genuine issue of material fact on this issue.  While the County has presented evidence of a legitimate, non-discriminatory

reason for Defendants' action, the court finds that a jury must decide whether the reason is worthy of belief, especially given that the Career Service Council found that terminating Plaintiff's employment was too severe a consequence.  Although Plaintiff faces an uphill battle on this claim in light of the undisputed findings contained in the Organizational Review, a jury must decide whether the County's asserted reason for Plaintiff's termination was pretext for discrimination.

Plaintiff also contends that his retaliation claim survives summary judgment under a mixed-motive theory.  In order to establish a mixed-motives case, a "plaintiff may directly show that retaliatory animus played a 'motivating part' in the employment decision."[16]  *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 998 (10th Cir. 2011) (citation omitted).  If the plaintiff can prove that retaliatory animus was a motivating factor, the burden shifts to the employer to demonstrate that it would have taken the same action irrespective of the retaliatory motive.  *Id*. Here, the court finds that Plaintiff has created a disputed issue of fact regarding whether an impermissible motive played a motivating part in terminating his employment and whether the County would have taken the same action absent the alleged retaliatory motive.  Thus, the court finds that Plaintiff's retaliation claim survives Defendants' motion for summary judgment.

---

[16] Plaintiff contends that "Defendant County must show that [without his involvement in helping Ms. Nish report sexual harassment the County] would have initiated an investigation into an employee who had no complaints against him and who had successful evaluations for 16 years and then would have terminated that employee."  There is no legal support for Plaintiff's contention that *initiating an investigation* constitutes an "adverse action" as defined by the case law.  Rather, once Plaintiff proves that retaliatory animus was a motivation factor, the burden of persuasion shifts to Defendant to prove that it would have terminated his employment absent the retaliatory motive.  *See Fye v. Oklahoma Corp. Comm'n*, 516 F.3d 1217, 1225 (10th Cir. 2008).

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment [Docket No. 19] is GRANTED in part and DENIED in part.   Plaintiff's First and Second Causes of Action are DISMISSED, but his Sixth Cause of Action for Retaliation pursuant to Title VII remains.   Within the next week, the court will set a new trial date and will issue a Trial Order, setting forth the deadlines for filings related to trial.

DATED this 4th day of June, 2012.

BY THE COURT:

DALE A. KIMBALL
United States District Judge